**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:18-cv-00312-MR
[CRIMINAL CASE NO. 1:15-cr-00084-MR-1]**

| | |
|---|---|
| JOEL ELIAS GONZALEZ, )<br>)<br>Petitioner, )<br>)<br>vs. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. )<br>_____ ) | **MEMORANDUM OF<br>DECISION AND ORDER** |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1].

**I.     BACKGROUND**

In September 2015, Petitioner Joel Elias Gonzalez was charged in a Bill of Indictment with distribution of a mixture and substance containing 50 grams of methamphetamine (Count One); distribution of 50 grams of actual methamphetamine (Count Two); and distribution of a mixture and substance containing a detectable amount of methamphetamine (Count Three), all in violation of 21 U.S.C. § 841(a)(1). [Criminal Case No. 1:15-cr-00084-MR ("CR"), Doc. 10: Indictment]. According to the Presentence Report, Petitioner had distributed methamphetamine in and around Macon County,

North Carolina. [CR 1:15-cr-00084-MR-DLH-1, Doc. 26 at ¶ 8: PSR]. A confidential source (CS) turned over drugs that Petitioner had fronted to the CS, recorded phone calls in which the CS and Petitioner discussed the drugs, and conducted a controlled purchase of crystal methamphetamine from Petitioner. [Id. at ¶¶ 9-21]. During the controlled purchase, Petitioner sold the CS 101.4 grams of 96.4% pure "actual" methamphetamine. [Id. at ¶ 18].

After Petitioner was arrested, he contacted his Georgia-based distributor, Kory Farman, to confirm that Farman had gotten everything (any leftover crystal methamphetamine) and that he was still entitled to a share of the profits. [Id. at ¶¶ 15, 23]. Farman later told investigators that Petitioner was his supply source for crystal methamphetamine and that he had moved up to buying half a pound of drugs at a time. [Id. at ¶ 28]. Farman also identified three other customers who bought from Petitioner, including the CS. [Id.]. Farman also admitted that after Petitioner's arrest, Farman had retrieved over 2.2 pounds of crystal methamphetamine from Petitioner's property and sold it. [Id. at ¶ 29]. The person who bought the crystal methamphetamine confirmed this sale. [Id. at ¶ 31].

Petitioner's estranged wife, Susan Harris, also confirmed that she had found crystal methamphetamine at her residence on several occasions and

had confronted Petitioner about it. [Id. at ¶¶ 24-27]. Investigators found containers with trace amounts of crystal methamphetamine at her residence. [Id. at ¶ 26]. Petitioner was charging $800 an ounce for the crystal methamphetamine. [Id. at ¶ 23].

In February 2016, Petitioner pled guilty pursuant to a written plea agreement to Count Two of the Bill of Indictment. [CR Doc. 19: Plea Agreement]. As part of Petitioner's plea agreement, the parties agreed that a base offense level of 32 was appropriate; that no enhancement for playing an aggravated role or obstruction of justice applied; and that Petitioner should receive a three-level reduction for acceptance of responsibility. [Id. at ¶ 7]. In exchange for Petitioner's guilty plea to Count Two, the Government agreed to dismiss Counts One and Three at the appropriate time. [Id. at ¶ 2]. Petitioner waived the right to challenge his conviction or sentence on direct appeal or in any post-conviction proceeding, except as to claims of ineffective assistance of counsel or prosecutorial misconduct. [Id. at ¶¶ 18-19]. After a plea hearing, the Magistrate Judge accepted Petitioner's guilty plea, finding that it was knowingly and voluntarily made. [Id., Doc. 21: Acceptance and Entry of Guilty Plea].

A probation officer prepared a presentence report, recommending in accordance with the parties' joint recommendations in the plea agreement

that Petitioner's total offense level was 29. [CR Doc. 26 at ¶ 48]. With a total offense level of 29 and a criminal history category of VI, Petitioner's advisory guidelines range was calculated to be 151 to 188 months' imprisonment. [Id. at ¶¶ 76, 120]. In May 2016, this Court sentenced Petitioner to 151 months of imprisonment, the low end of the advisory guidelines range. [CR Doc. 32: Judgment].

In May 2017, Petitioner filed a motion to vacate, arguing *inter alia* that his counsel failed to file a notice of appeal despite Petitioner's express instruction to do so. [CR Doc. 34]. The Court granted Petitioner's motion to vacate in part and directed the entry of an Amended Judgment so as to allow Petitioner to file a direct appeal. [CR Doc. 36]. The other claims raised by Petitioner in his motion to vacate were dismissed without prejudice. [Id.]. Petitioner filed his direct appeal in August 2017. His appellate counsel filed a motion pursuant to Anders v. California, 386 U.S. 738 (1967), certifying that there were no meritorious issues for appeal, but questioning whether this Court had correctly calculated Petitioner's criminal history score. United States v. Gonzalez, 711 F. App'x 183, 184 (2018). The Fourth Circuit affirmed Petitioner's conviction and sentence. Id.

Petitioner timely filed the present motion to vacate in October 2018, arguing that his trial counsel provided ineffective assistance by failing to

4

investigate whether the drugs that he allegedly distributed contained methamphetamine before advising Petitioner to plead guilty; that his attorney had a conflict of interest; and that the Government committed prosecutorial misconduct. [Doc. 1 at 13-16]. The Government filed its response on February 15, 2019. [Doc. 5].

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the motion to vacate can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

### A. Petitioner's Ineffective Assistance of Counsel Claims

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance

by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010).

Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

Finally, to demonstrate prejudice in the context of a guilty plea, a petitioner must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). In evaluating such a claim, statements made by a defendant under oath at the plea hearing carry a

6

"strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. at 73-74. Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss . . . any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d at 221-22.

### 1. Petitioner's Contention that Counsel Was Ineffective for Advising Petitioner to Plead Guilty

Petitioner first contends that his attorney was deficient for advising him to plead guilty before counsel investigated whether the drugs Petitioner distributed contained actual methamphetamine. [Doc. 1 at 14].

Petitioner's claim is without merit. The parties to the transactions identified the drugs as crystal methamphetamine, and the drug prices were consistent with that. A laboratory analysis also confirmed that the drugs at issue in the controlled purchase contained methamphetamine. [CR Doc. 26 at ¶ 18]. Counsel was not deficient in advising Petitioner to plead guilty where there was overwhelming evidence of his guilt from several people, and positive field tests indicated the presence of actual methamphetamine. Had the defense waited for additional testing, Petitioner ran the risk of facing

7

an increased drug amount based on quantities of actual methamphetamine, rather than a mixture and substance containing methamphetamine.

Although Petitioner asserts that counsel "misrepresented material facts "to induce him to plead guilty [Doc. 1 at 14], this assertion is conclusory because he does not explain what these material facts were.  United States v. Dyess, 730 F. 3d 354, 359-60 (4th Cir. 2013) (claims based on vague and conclusory assertions should be dismissed).  Moreover, Petitioner has not shown that it would have been objectively reasonable for him to proceed to trial, nor can he point to any contemporaneous evidence that going to trial was in fact his preference.

Petitioner asserts that he was prejudiced because his sentence was based on drug quantities in excess of the amounts specified in the Bill of Indictment and because not all the drugs for which he was held responsible were tested.  [Doc. 1 at 14].  These arguments are meritless.  Under the Sentencing Guidelines, drug weights from uncharged or dismissed conduct can be considered relevant conduct for sentencing purposes.  See U.S.S.G. § 1B1.3; United States v. Jones, 31 F.3d 1304 (4th Cir. 1994); United States v. Miranda, 381 F. App'x 258, 260 (4th Cir. 2010); Shuff v. United States, No. 3:14cv336, 2014 WL 4829056, at *5 (W.D.N.C. Sept. 29, 2014).  Thus, Petitioner was properly held responsible for the total amount of drugs relating

to his drug activity, regardless of the counts against him.  Further, Petitioner cannot demonstrate prejudice by the failure to test all the drugs at issue.  As noted above, there was ample evidence from the statements of the participants in the transactions to establish that the substances involved contained methamphetamine.

By pleading guilty, Petitioner obtained a concession from the Government that it would not seek an upward adjustment for Petitioner having asked Farman to distribute the remaining methamphetamine after Petitioner was arrested.  [See CR Doc. 2 at ¶ 7; CR Doc. 26 at ¶ 32].  Additionally, Petitioner received a three-level reduction for acceptance of responsibility, a benefit he would not have received had he proceeded to trial.  [CR Doc. 26 at ¶¶ 46-48].

For all these reasons, the Court concludes that Petitioner has not demonstrated prejudice resulting from counsel's performance.

### 2. Petitioner's Contention that Counsel Was Ineffective Based on a Conflict of Interest

To establish ineffective assistance based on a conflict of interest, a "petitioner must show (1) that his lawyer was under 'an actual conflict of interest' and (2) that this conflict 'adversely affected his lawyer's performance.'" United States v. Nicholson, 475 F.3d 241, 249 (4th Cir. 2007) (quoting Cuyler v. Sullivan, 446 U.S. 335, 348 (1980)).  It is not sufficient to

to his drug activity, regardless of the counts against him.  Further, Petitioner cannot demonstrate prejudice by the failure to test all the drugs at issue.  As noted above, there was ample evidence from the statements of the participants in the transactions to establish that the substances involved contained methamphetamine.

By pleading guilty, Petitioner obtained a concession from the Government that it would not seek an upward adjustment for Petitioner having asked Farman to distribute the remaining methamphetamine after Petitioner was arrested.  [See CR Doc. 2 at ¶ 7; CR Doc. 26 at ¶ 32].  Additionally, Petitioner received a three-level reduction for acceptance of responsibility, a benefit he would not have received had he proceeded to trial.  [CR Doc. 26 at ¶¶ 46-48].

For all these reasons, the Court concludes that Petitioner has not demonstrated prejudice resulting from counsel's performance.

### 2. Petitioner's Contention that Counsel Was Ineffective Based on a Conflict of Interest

To establish ineffective assistance based on a conflict of interest, a "petitioner must show (1) that his lawyer was under 'an actual conflict of interest' and (2) that this conflict 'adversely affected his lawyer's performance.'" United States v. Nicholson, 475 F.3d 241, 249 (4th Cir. 2007) (quoting Cuyler v. Sullivan, 446 U.S. 335, 348 (1980)).  It is not sufficient to

show the mere *possibility* of a conflict; rather, a petitioner must show that an *actual* conflict existed. "To establish an actual conflict of interest, [Petitioner] 'must show that [his] interests diverged with respect to a material factual or legal issue or to a course of action." Id. (quoting Gilbert v. Moore, 134 F.3d 642, 652 (4th Cir. 1998) (en banc)). To show that the conflict adverse affected counsel's performance, Petitioner must show three things: (1) there was a "plausible alternative defense strategy or tactic" that counsel could have pursued; (2) "the alternative strategy or tactic was objectively reasonable" based on the facts of the case known by the attorney when the tactical decision was made; and (3) "counsel's failure to pursue that strategy or tactic was linked to the actual conflict." Mickens v. Taylor, 240 F.3d 348, 361 (4th Cir. 2001) (en banc).

Petitioner asserts that his counsel had an actual conflict of interest because he was representing Petitioner while he also was representing Jamie Swartz, Petitioner's fiancé. [Doc. 1 at 14-15]. He contends that Swartz was a cooperating witness for the Government in the case against him.[1] [Id. at 15]. Petitioner argues that his attorney intentionally

---

[1] Swartz was convicted in an unrelated case and was sentenced to 70 months' imprisonment in March 2016. [CR Doc. 26 at ¶ 98]; see also United States v. Swartz, No. 1:15-cr-00068-MOC-3 (W.D.N.C.). Although Petitioner originally received appointed counsel, he eventually retained the same counsel as Swartz. [CR Docs. 5, 11-13].

misrepresented the impact and terms of his plea offer and induced him to plead guilty to an enhanced sentence of which he is innocent to prevent him from going to trial and losing him as a client. [Id.].

Petitioner does not explain how his attorney misrepresented the impact and terms of his plea offer, and Petitioner's own plea hearing testimony belies this contention. Thus, this contention will be dismissed as conclusory. See Dyess, 730 F.3d at 359-60. Additionally, as discussed above, Petitioner's contention that he is innocent of the charge of distribution of methamphetamine is without merit. Given the overwhelming evidence against Petitioner and the benefits he received from the plea agreement, proceeding to trial would not have been objectively reasonable.

Because Petitioner has not identified any plausible alternative defense strategy or tactic that counsel could have pursued, this ineffective assistance claim fails. See Mickens, 240 F.3d at 361.

### B. Petitioner's Claim of Prosecutorial Misconduct

In his last claim, Petitioner argues that the Assistant United States Attorney misrepresented to the grand jury that Petitioner distributed methamphetamine. [Doc. 1 at 15].

To establish prosecutorial misconduct, a defendant must demonstrate: (1) that the conduct of the prosecutor was improper, and (2) that the improper

conduct prejudicially affected his substantial rights so as to deprive him of a fair trial. See United States v. Mitchell, 1 F.3d 235, 240 (4th Cir. 1993). Here, ample evidence existed -- based on the officers' investigation, the statements of participants, and the testing of the substances seized -- that Petitioner was distributing not only methamphetamine, but also crystal methamphetamine. Petitioner's claim that the prosecutor misrepresented the nature of the substance distributed by Petitioner is simply baseless. Accordingly, Petitioner has not shown prosecutorial misconduct, and this claim will be dismissed.

## IV. CONCLUSION

For the reasons stated herein, the Court denies and dismisses the motion to vacate.

The Court further finds that Petitioner has not made a substantial showing of a denial of a constitutional right. See generally 28 U.S.C. § 2253(c)(2); see also Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (citing Slack v. McDaniel, 529 U.S. 473, 484-85 (2000)). Petitioner has failed to demonstrate both that this Court's dispositive procedural rulings are debatable, and that the Motion to Vacate states a

debatable claim of the denial of a constitutional right. Slack v. McDaniel, 529 U.S. at 484-85. As a result, the Court declines to issue a certificate of appealability. See Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

## **O R D E R**

**IT IS, THEREFORE, ORDERED** that Petitioner's Section 2255 Motion to Vacate, Set Aside, or Correct Sentence [Doc. 1] is **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED**.

Signed: March 5, 2019

Martin Reidinger
United States District Judge